# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK JONES,<br><br>    Plaintiff,<br><br>v.<br><br>J BRIAN COLEMAN, *ET AL.*,<br><br>    Defendants. | Civil Action No. 11-701<br><br>District Judge David S. Cercone<br>Magistrate Judge Cynthia Reed Eddy |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.** **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF. No. 38) be granted.

**II.** **REPORT**

On May 26, 2011, Plaintiff, Frank Jones, initiated this *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 against the following individuals employed at the State Correctional Institution at Fayette: Superintendent Brian Coleman, Unit Manager Jill Monas, and counselors Jason Ashton and Dawn Murray. The case was referred to then Magistrate Judge Cathy Bissoon. On August 23, 2011, Defendants filed a Motion to Dismiss (ECF No. 13) along with a Brief in support thereof (ECF No. 17) claiming that the Complaint should be dismissed for failure to state a claim upon which relief may be granted. Thereafter, Plaintiff filed a Motion for Leave to File an Amended Complaint (ECF No. 20) which was denied due to Plaintiff's failure to disclose the ways in which his Complaint would be amended. After filing a renewed Motion for Leave to File an Amended Complaint, to which Defendants responded, Plaintiff filed a Notice of Appeal to the Court of Appeals for the Third Circuit, which ultimately resulted in the case being

closed for administrative purposes and the Motion to Dismiss was dismissed without prejudice.

The case was reassigned to me on October 27, 2011, upon the elevation of Cathy Bissoon to the District Court. Plaintiff's Appeal was dismissed on November 22, 2011 due to his failure to pay the required filing fees. After nearly one year of inactivity, Plaintiff filed a Motion to Reopen the Case, which was granted on October 19, 2012. Following a period of discovery, on January 22, 2013, Defendants filed a Motion for Summary Judgment (ECF No. 38), a Brief in Support thereof (ECF No. 39), a Concise Statement of Material Facts (CSMF) (ECF No. 40), and an Appendix (ECF No. 41). On January 23, 2013, I issued an Order requiring Plaintiff to file a response to the pending motion (ECF No. 42). That four-page order specifically informed Plaintiff that the Local Rules of the United States District Court for the Western District of Pennsylvania require that a party opposing a motion for summary judgment file a responsive "concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by: (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety ... with appropriate reference to the record; and (c) setting forth ... any other material facts that are allegedly at issue and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment." L.R. 56.C.1. In addition, that Order clearly stated that, pursuant to our Local Rule 56.E, alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will, for the purpose of deciding the motion for summary judgment, be deemed admitted unless specifically

denied or otherwise controverted by a separate concise statement of the opposing party.

On February 21, 2013, Plaintiff filed a Brief in Opposition to Defendants' Motion along with a host of Exhibits (ECF No. 43). However, Plaintiff did not file any concise counter statement of facts; nor did he specifically dispute Defendants statement of facts with the requisite citation to the record. Consequently, in accordance with our Local Rules, all factual averments contained in the Defendants' CSMF will be deemed admitted for purposes of summary judgment. *Accord* Enigh v. Miller, Civil No. 08-1726, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases). *See also* Cuevas v. United States, Civil No. 09–43J, 2010 WL 1779690, at * 1 (W.D. Pa. Apr.29, 2010) ("Plaintiff's response to Defendant's Motion does not contain any basis for any ... denial of a fact and also fails to reference the record for each such denial. Though this Court must give certain latitude to a *pro se* litigant, it is not for the Court to sort through the entire record to determine the basis of an alleged disputed fact. As Plaintiff has failed to comply with our local rules, Defendant's Statement of Facts as set forth in [its Concise Statement of Material Facts] are admitted as true and correct.").

## A. Standard of Review

Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed

issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999), Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

B. Mandatory Exhaustion Requirement

In the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

(a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative

remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to the mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. *See* Booth v. Churner, 532 U.S. 731 (2001) (holding that the PLRA requires administrative exhaustion even where the grievance process does not permit award of money damages and prisoner seeks only money damages, as long as grievance tribunal has authority to take some responsive action). In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought. The grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the Secretary's Office. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are

required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member.

The Court of Appeals for the Third Circuit repeatedly has instructed that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy results in procedural default, thereby precluding an action in federal court. *See* Torrence v. Thompson, 435 F. App'x 56, 593 (3d Cir. 20011); Banks v. Roberts, 251 F. App'x 774 (3d Cir. 2007); Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. "A prisoner who does not want to participate in the

6

prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction" and "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 93-94. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Id*. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. *Id*.

### C. Plaintiff's Compliance with the DOC Grievance Policy

Record evidence in this case reveals the following. Plaintiff filed Grievance No. 314051 on April 8, 2010, complaining about DOC's negative parole recommendation, as well as his "H" Code status, which he claims was a result of retaliation (ECF No. 43-1, p. 1). On April 12, 2010, Plaintiff received a Grievance Rejection Form with the following boxes marked: "Grievances based upon different events shall be presented separately"; and "The grievance was not submitted within fifteen (15) working days after the event upon which claims are based." The next day, on April 13, 2010, Plaintiff filed an "Inmate's Request to Staff Member," complaining that the grievance was filed within fifteen days and that the grievance was not about two separate events. On April 15, 2010, Plaintiff received a response from the facility grievance coordinator explaining the reasons for the rejection. Specifically, the response provided that Plaintiff had had his H code status since 8-24-09 and that he had failed to state the date that he was staffed for parole (ECF No. 43-3, p. 1).

Plaintiff re-filed the original grievance without any changes or corrections and it was rejected on the same day it was received by the grievance coordinator for the same two reasons (ECF No. 41-1). On April 19, 2010, Plaintiff completed another Inmate's Request to Staff Member on April 21, 2010 and received a response dated April 21, 2010, indicating that his resubmission did not comply with DOC policies (ECF No. 43-6). Plaintiff re-submitted his initial grievance for the third time, which was received on April 22, 2010 (ECF No. 41-1). On April 25, 010, Plaintiff completed another Inmate's Request to Staff Member form addressing the Superintendent and arguing that his grievance was improperly rejected (ECF No. 43-7). The form was sent to the grievance coordinator who responded on May 10, 2010 by asking whether Plaintiff was attempting to appeal the grievance. At the top of the document, Plaintiff responds that it is in fact an appeal, and the document is date stamped by the Superintendent's Assistant on May 12, 2010 (ECF No. 41-1, p. 18).

On May 19, 2010, Plaintiff received a correspondence from the Superintendent rejecting his appeal as follows.

> I am in receipt of your rejected grievance #314051 and your appeal of such. Your grievance was rejected and returned to you because you have failed to comply with the directives of the DC ADM 804, Inmate Grievance System.
>
> Your original grievance was received in this office on 4/12/10 and it was rejected. According to the DC ADM 804 you can correct the issues which made it non-compliant and resubmit it within 5 days. You did resubmit it on 4/15/10 but you did not correct the deficiency *i.e.* show the date of incident so that it could be verified that it was written within 15 working days as required by policy. You again submitted it on 4/22/10 and were informed that you can only resubmit a grievance one time. In all three submissions a date did not appear that would have enabled the Grievance Coordinator to determine it was written within the 15 working days as required by policy.
>
> Your appeal is dismissed.

ECF No. 43-8.

Plaintiff filed an appeal to final review before the Secretary's Office of Inmate Grievances and Appeals (SOIGA) (ECF No. 43-9). On June 17, 2010, Plaintiff was notified by SOIGA that he failed to enclose a legible copy of his appeal to the facility manager (ECF No. 43-10). That notice further provided that Plaintiff had fifteen working days to submit the required documentation. On June 23, 2010, Plaintiff wrote another Inmate to Staff Request to Superintendent Coleman requesting a copy of his appeal (ECF No. 43-11). On June 29, 2010, and July 1, 2010, Plaintiff sent additional requests to Superintendent Coleman requesting a copy of his appeal (ECF No. 43-12, 43-14). In response his requests, Plaintiff was told that he would be required to send a cash slip for $16.00 in order to receive a copy of his appeal (ECF No. 41-1, p. 26).[1] On July 16, 2010, a Final Appeal Decision was issued dismissing Plaintiff's grievance for failing to provide necessary documentation for purposes of rendering a decision (ECF No. 41-1, p. 28).

Based on the foregoing sequence of events, it is undisputed that Plaintiff failed to exhaust by not providing the required documentation at the final appeal level. *Accord* Torrence v. Thompson, 435 F. App'x 56, 593 (3d Cir. 20011) (state inmate's assertion that he needed his limited funds to pursue his civil rights lawsuits against state corrections department did not warrant excusing his failure to exhaust administrative remedies through prison grievance process, due to his refusal to submit copies of items required to perfect appeal); Torrence v. Sobina, 455 F. App'x 140 (3d Cir. 2011); Torrence v. Thompson, 335 F. App'x 151, 153 (3d Cir. 2009). As such, Plaintiff's claims have been procedurally defaulted.

---

1 Pursuant to policy DC-ADM 003, (IV)(F)(4)(a-b), Plaintiff was responsible for a $15 "search and retrieval fee" and $1 copy fee in order to obtain a copy of his own appeal to the Superintendent. *See*

As stated by the Court of Appeals for the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." <u>Nyhuis</u>, 204 F.3d at 73 (quotation omitted). The Supreme Court of the United States reiterated this tenet in <u>Booth</u>. Consequently, this Court is required to follow the Supreme Court's directive in <u>Booth</u> where the record shows that Plaintiff failed to have exhausted his available administrative procedures. Accordingly, Defendants' Motion for Summary Judgment should be granted.

### III. <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 38) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

March 1, 2013

                                                   <u>/s/ Cynthia Reed Eddy</u>
                                                   Cynthia Reed Eddy
                                                   United States Magistrate Judge

---

http://www.cor.state.pa.us/portal/server.pt/community/doc_policies/20643.

Frank Jones
BM7121
SCI-Fayette
PO Box 9999
LaBelle, PA 15450